[No. 63213-2-I. Division One. January 10, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. TALIFERRO B. WILLIAMS, *Appellant*.

300

*Vanessa Mi-jo Lee* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Brian M. McDonald, Deputy*, for respondent.

¶1 DWYER, C.J. — Where the jury finds that a defendant committed a crime under aggravating circumstances, this

factual finding authorizes the trial court to exercise its discretion in imposing any sentence between the statutorily-authorized minimum sentence and the statutorily-authorized maximum sentence. Here, the jury made such a determination. Thus, Taliferro Williams's constitutional rights were not violated by the imposition of an exceptional sentence that did not exceed the statutory maximum. Moreover, Williams's additional claims of error are unavailing. Accordingly, we affirm.

I

¶2 On September 13, 2008, around 9:00 a.m., Taliferro Williams was released from the King County jail. He had been incarcerated as a result of an earlier conviction for assault in the third degree. Later that same night, two Seattle police officers, James Shearer and Kerry Zieger, were on duty as uniformed mountain bike officers. They observed Williams walking along a street in the Belltown neighborhood of Seattle, following two people, and yelling out threatening statements and obscenities. The officers were across the street from where Williams was yelling. Williams made comments to the effect of, "[H]ey asshole, I can kick your ass, fuck you" and "[Y]eah, I can kick your ass." 2 Report of Proceedings (RP) (Jan. 14, 2009) at 17.

¶3 The police officers, on their bicycles, approached Williams from behind. Officer Zieger perceived that Williams was carrying a small bottle of liquor. Officer Zieger grabbed Williams's left wrist in order to make Williams release the bottle. Almost simultaneously, Officer Shearer grabbed Williams's upper right arm. Williams's arm moved downward and he cut Officer Shearer with a hemostat.[1] Williams had been holding the hemostat in his right fist, with the point aimed downwards. Williams jabbed at Officer Shearer several times. Ultimately, Officer Shearer

---

[1] A "hemostat" is a pair of medical scissors. *See McGrady v. Brink*, 195 Wash. 626, 628, 81 P.2d 800 (1938); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1056 (1969) ("an instrument for compressing a bleeding vessel").

suffered three cuts to his right leg, just above the knee. After arresting Williams, Officer Shearer was treated at Swedish Medical Center.

¶4 The State charged Williams with assault in the third degree, alleging that he had intentionally assaulted a law enforcement officer who was performing official duties at the time of the assault. The State subsequently amended the information to allege the aggravating circumstance that Williams had committed the assault "shortly after being released from incarceration." Clerk's Papers (CP) at 8. Williams's trial was bifurcated in order to prevent the jury from hearing evidence related to the aggravating factor unless it first determined that Williams had committed the assault.

¶5 During the first phase of trial, Officer Shearer testified that Williams looked back as the officers were approaching him. Officer Shearer also testified that as he was getting off of his bike and was moving toward Williams, Officer Zieger yelled, "Seattle Police." 2 RP (Jan. 14, 2009) at 20. Officer Shearer then explained that Williams "was trying to conceal the hemostat in his hand." 2 RP (Jan. 14, 2009) at 22. He also testified, "I felt I was deliberately being struck by him. I think he was deliberat[ely] trying to injure me when it occurred." 2 RP (Jan. 14, 2009) at 24. Officer Zieger testified that right before he contacted Williams, Williams looked back, to the left, and to the right with a quick glance over his shoulder. Officer Zieger also explained that after Williams had been placed under arrest, Williams stated, "You fucking punks. Take these handcuffs off and I will kick your ass." RP (Jan. 15, 2009) at 44.

¶6 At the conclusion of the evidence, the jury was instructed. The jury instructions included an instruction that "[a] defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt." CP at 16. The jury found Williams guilty of assault in the third degree.

¶7 During the second phase of the bifurcated trial, a King County jail captain testified that Williams had been released at 8:58 a.m. on September 13, 2008, and had then been booked back into the jail later that same night. The defense did not present any evidence. The trial court read to the jury two supplemental instructions and provided the jury with copies of the supplemental instructions and all of the original instructions. The jury was given a special verdict form that asked, "Did the defendant commit the crime of assault third degree shortly after being released from incarceration?" CP at 26. The jury answered affirmatively on the special verdict form.

¶8 Before the jury returned with a verdict on the aggravating charge, the trial court and the parties were informed that on the morning that the second phase of the trial began, people had approached the jurors outside of the courtroom and had made comments to the jurors. The comments were "I am really mad" and "[y]ou put my son in jail." RP (Jan. 16, 2009) at 16. Williams moved for a mistrial as to the aggravating charge. The trial court denied the motion. After the jury rendered its verdict, the trial judge asked the jury if the earlier spectator comments had "affect[ed] any juror's ability to be fair and impartial." RP (Jan. 16, 2009) at 22-23. No juror answered affirmatively.

¶9 Based on Williams's offender score of 3, the standard sentencing range applicable to his assault in the third degree conviction was 9 to 12 months in jail. The statutory maximum for a conviction of assault in the third degree is 5 years of incarceration. The trial court imposed an exceptional sentence of 36 months in custody. The trial court entered written findings of fact and conclusions of law in support of the exceptional sentence.

¶10 Williams appeals.

II

¶11 Williams first contends that there is insufficient evidence to support his conviction of assault in the third degree. We disagree.

¶12 We review an allegation of insufficient evidence in the light most favorable to the State to determine whether "any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (citing *State v. Green*, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980)). "When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Salinas*, 119 Wn.2d at 201. "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. We consider circumstantial evidence to be as reliable as direct evidence. *State v. Myers*, 133 Wn.2d 26, 38, 941 P.2d 1102 (1997). Credibility determinations are for the trier of fact and cannot be reviewed on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

¶13 RCW 9A.36.031(1)(g) provides, in relevant part, that

[a] person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:

. . . .

(g) Assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault.

In order to commit assault, a person must have specific intent to cause bodily harm or to create an apprehension of bodily harm. *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d 396 (1995).

¶14 Here, both officers testified that Williams looked toward them as the officers approached him from behind. There was evidence that Williams was holding the hemostat in his fist, with the point aimed downward. In addition, Williams repeatedly stabbed Officer Shearer's leg, causing the officer to sustain three wounds. Furthermore, testi-

mony revealed that Williams attempted to conceal the weapon after hurting Officer Shearer and that Williams was aggressive even after being arrested. A jury could reasonably infer from this evidence that Williams was aware that two men were approaching him, that he was holding the hemostat as a weapon, and that the stabbings were intentional. Viewing the evidence in the light most favorable to the State, sufficient evidence was admitted from which a rational trier of fact could find beyond a reasonable doubt that Williams intentionally stabbed Officer Shearer, a law enforcement officer, while Officer Shearer was performing his official duties. Sufficient evidence was presented to support the jury's verdict finding Williams guilty of assault in the third degree.[2]

## III

¶15 Williams next contends that the jury instructions on the aggravating factor were constitutionally inadequate because they did not articulate particular considerations that Williams believes are elements of the aggravator. We disagree.

¶16 In 2005, our legislature amended the Sentencing Reform Act of 1981, chapter 9.94A RCW, to include numerous aggravating factors that, if found, allow the trial court to impose an exceptional sentence. RCW 9.94A.535. Most of these circumstances must be found by a jury. RCW 9.94A-.535(3); RCW 9.94A.537(3) ("The facts supporting aggravating circumstances shall be proved to a jury beyond a reasonable doubt. The jury's verdict on the aggravating

---

[2] Williams's briefing also suggests that there was insufficient evidence that he knew that the person he assaulted was a law enforcement officer. Both officers testified that Williams looked behind him at the uniformed officers approaching him. Officer Shearer testified that Officer Zieger yelled, "Seattle Police" before Officer Shearer made physical contact with Williams. Thus, there was evidence indicating that Williams knew the person he assaulted was a police officer. Such evidence was unnecessary in any event: "Under the plain meaning of RCW 9A.36.031(1)(g), knowledge that the victim was a police officer in the performance of official duties is not an element of the crime of third degree assault." *State v. Brown*, 140 Wn.2d 456, 467, 998 P.2d 321 (2000).

factor must be unanimous, and by special interrogatory."). Each of the aggravating factors that must be found by the jury is based on something more than just the fact of prior conviction, which can be found by the trial court without a violation of a defendant's Sixth Amendment rights. *Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). When the legislature codified these aggravating factors, it explained:

> The legislature intends that aggravating facts, other than the fact of a prior conviction, will be placed before the jury. The legislature intends that the sentencing court will then decide whether or not the aggravating fact is a substantial and compelling reason to impose greater punishment. The legislature intends to create a new criminal procedure for imposing greater punishment than the standard range or conditions *and to codify existing common law aggravating factors, without expanding or restricting existing statutory or common law aggravating circumstances. The legislature does not intend the codification of common law aggravating factors to expand or restrict currently available statutory or common law aggravating circumstances.*

LAWS OF 2005, ch. 68, § 1 (emphasis added).

¶17 One of the aggravating factors codified in 2005 is commonly referred to as the "rapid recidivism" factor. LAWS OF 2005, ch. 68, § 3, codified at RCW 9.94A.535(3)(t). In order for the trial court to impose an exceptional sentence for a current offense based on the rapid recidivism factor, the jury must find that the defendant committed the current offense "shortly after being released from incarceration." RCW 9.94A.535(3)(t).

¶18 The statutory rapid recidivism factor is the same factor that we articulated in *State v. Butler*, 75 Wn. App. 47, 876 P.2d 481 (1994), which was, at the time the legislature was considering the 2005 amendments, the only reported decision to have recognized rapid recidivism as a circumstance justifying the imposition of an exceptional sentence. The defendant therein committed a robbery and an at-

tempted rape on the same day that he was released from prison after serving a sentence for a prior robbery. *Butler*, 75 Wn. App. at 48-49. The trial court imposed an exceptional sentence based, in part, on the defendant's being " 'particularly culpable by virtue of the rapidity with which he reoffended.' " *Butler*, 75 Wn. App. at 50. We upheld the exceptional sentence, reasoning that a short time period between prior incarceration and reoffense is a factor that is not contemplated in establishing the standard range, and, therefore, is a factor that can support an exceptional sentence. *Butler*, 75 Wn. App. at 54.

> Thus, we hold that the commission of a crime shortly after release from incarceration on another offense may properly be used to distinguish that crime from others in the same category. Hence, under circumstances such as those in the present case, rapid recidivism constitutes a sufficiently substantial and compelling reason to justify the imposition of an exceptional sentence.

*Butler*, 75 Wn. App. at 54. We also noted that "an exceptional sentence is justified if the circumstances of the crime indicate a greater disregard for the law than otherwise would be the case." *Butler*, 75 Wn. App. at 54.

¶19 The day before the governor signed into law the 2005 amendments that codified the rapid recidivism aggravating factor and required the jury to make the requisite finding, our Supreme Court reversed an exceptional sentence based upon the absence of a jury determination that the aggravating factor of rapid recidivism existed. *State v. Hughes*, 154 Wn.2d 118, 110 P.3d 192 (2005), *overruled on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006). The defendant therein, less than three months after being released from custody, had committed the same offense against the same victim. *Hughes*, 154 Wn.2d at 141-42. Amicus argued that the trial court, rather than the jury, could find rapid recidivism because it related only to the fact of conviction, which a trial court "is authorized to find under *Blakely*." *Hughes*, 154 Wn.2d at 141. Our Supreme Court disagreed, noting that an

exceptional sentence is justified where the circumstances show " 'a greater disregard for the law than otherwise would be the case' " and that a defendant's immediate reoffense reflects that disdain. *Hughes*, 154 Wn.2d at 141 (quoting *Butler*, 75 Wn. App. at 54). Because it is "the short time between release from prison and reoffense" that "demonstrate[s] a disregard and disdain for the law," the court explained, the inquiry is different from "merely stating [the defendant's] prior convictions." *Hughes*, 154 Wn.2d at 141. Thus, the jury—not the trial court—must act as fact finder. *Hughes*, 154 Wn.2d at 142.

¶20 The aggravating factor of rapid recidivism was next addressed in *State v. Saltz*, 137 Wn. App. 576, 154 P.3d 282 (2007). The defendant therein had, one month after being released from jail after serving a sentence for violating a no-contact order, committed malicious mischief against the same victim. *Saltz*, 137 Wn. App. at 579. The defendant stipulated to the prior conviction release date, to the date of the commission of the charged crime, and that the charged crime was committed " 'shortly after being released from incarceration.' " *Saltz*, 137 Wn. App. at 585. The defendant argued, however, that the reasons stated by the sentencing court did not support the imposition of an exceptional sentence because "nothing set apart the swiftness of his recidivism from an ordinary case of recidivism or the mere fact of his prior convictions." *Saltz*, 137 Wn. App. at 585. The court disagreed, holding that substantial and compelling reasons supported the exceptional sentence because Saltz had committed the crime within one month of being released from incarceration and because "the nature of the instant crime and the identity of the victim were similar to the crime for which he was previously incarcerated. This shows the disregard for the law referenced in *Butler*." *Saltz*, 137 Wn. App. at 585.

¶21 Here, the jury was asked, "Did the defendant commit the crime of assault third degree shortly after being released from incarceration?" CP at 26. Williams contends that this jury interrogatory is constitutionally inadequate

because although it articulated the requisite statutory element, *Hughes* and *Saltz* express additional elements that must be proved beyond a reasonable doubt in order for the aggravating factor to be found. Specifically, Williams argues that the State must prove not only the statutory element that the defendant committed the current offense shortly after release from incarceration, but "must also prove a) that the prior offense bore some similarity to the current offense; b) that the recidivism demonstrated a heightened threat or culpability; and c) that the recidivism demonstrated greater than usual disregard for the law."[3]

¶22 At trial, Williams did not object to the jury instructions on this basis. Generally, we will not consider issues raised for the first time on appeal. RAP 2.5(a); *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). However, where the error claimed is a manifest error affecting a constitutional right, it may be raised for the first time on appeal. RAP 2.5(a)(3). Thus, Williams must first establish that the error claimed is constitutional in nature.

¶23 "Due process requires a criminal defendant be convicted only when every element of the charged crime is proved beyond a reasonable doubt." *State v. O'Hara*, 167 Wn.2d 91, 105, 217 P.3d 756 (2009) (citing U.S. Const. amend. XIV; Wash. Const. art. I, § 22). "However, the 'constitution only requires the jury be instructed as to each element of the offense charged, and the failure of the trial court to further define one of those elements is not within the ambit of the constitutional rule.' " *O'Hara*, 167 Wn.2d at 105 (quoting *State v. Fowler*, 114 Wn.2d 59, 69-70, 785 P.2d 808 (1990)); *accord State v. Scott*, 110 Wn.2d 682, 690-91, 757 P.2d 492 (1988).

¶24 An aggravating factor is "the functional equivalent of an element." *Apprendi*, 530 U.S. at 494 n.19. The aggravating factor articulated in *Butler* and explicitly codified in RCW 9.94A.535(3)(t) is that "[t]he defendant committed the current offense shortly after being released from

---

[3] Appellant's Br. at 21.

incarceration." This is the only fact that must be found by the jury. Any further elaboration contained in *Hughes* and *Saltz* is merely an explanation of, and justification for, the aggravating factor. These additional considerations are not themselves elements of the aggravating circumstance element.

¶25 Rather, the explanations provided in *Hughes* and *Saltz* are more accurately characterized as "further definitions" of the statutory aggravator. As established by our Supreme Court, the failure of a trial court to further define an element is not a constitutional violation. *O'Hara*, 167 Wn.2d at 105; *Scott*, 110 Wn.2d at 689-91. Thus, Williams does not raise an issue affecting a constitutional right. Having not raised his concern in the trial court, he cannot challenge the jury instructions on appeal.

¶26 Williams argues to the contrary, asserting that *State v. Gordon*, 153 Wn. App. 516, 223 P.3d 519 (2009), *review granted*, 169 Wn.2d 1011, 236 P.3d 896 (2010), supports his claim of error. While we note that *Gordon* provides that "where an appellate court has further defined the legal standard of a statutory aggravating factor yet the jury instruction fails to include the legal standard, an error of constitutional magnitude is present," 153 Wn. App. at 534, we do not agree that *Gordon* mandates appellate relief in this case.

¶27 *Gordon* appears to be premised on the belief that elements have elements. *See* 153 Wn. App. at 534 ("the elements of an aggravating factor"). However, an element does not contain elements. No other authority suggests that this is so. Moreover, even if *Gordon* was correctly decided—a determination we leave to our Supreme Court to make—Williams's argument nevertheless fails.

¶28 Contrary to Williams' contention, the cases upon which he relies do not express additional elements of the rapid recidivism aggravator. Rather, they articulate the rationale underlying the imposition of an exceptional sentence where a defendant has committed a crime shortly after being released from incarceration. Additionally, they

describe circumstances supporting a trial court's conclusion that the aggravating factor presented a substantial and compelling reason justifying the imposition of an exceptional sentence.

¶29 A trial court is not required to impose an exceptional sentence merely because a jury finds an aggravating circumstance proved. Rather, in such a circumstance, the trial court *may* sentence the defendant to an exceptional sentence if it determines "that the facts found are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.537(6). The original justification, as expressed in *Butler*, for imposing an exceptional sentence where a defendant has rapidly reoffended is that rapid recidivism demonstrates a heightened threat or culpability and demonstrates a greater than usual disregard for the law. In each case, the fact that a prior offense bore some similarity to the current offense provided support for a trial court's decision to impose an exceptional sentence rather than for the fact finder's determination that the aggravator existed. *See, e.g., State v. Combs*, 156 Wn. App. 502, 232 P.3d 1179 (2010). However, no case holds that these considerations are additional factual elements that must be found by a jury.

¶30 Our conclusion today is faithful to the legislature's intent in enacting RCW 9.94A.535(3)(t), which was "to codify existing common law aggravating factors, without expanding or restricting existing statutory or common law aggravating circumstances." LAWS OF 2005, ch. 68, § 1. *Butler* held that the commission of a crime shortly after release from incarceration on another offense may properly be used to distinguish that crime from others in the same category. 75 Wn. App. at 54. To read RCW 9.94A.535(3)(t) as requiring the jury to additionally find that Williams had a pattern of similar prior offenses, that his recidivism demonstrated particular harm or culpability, or that his recidivism revealed a greater than usual disregard or disdain for the law "would result in the 'expan[sion of] available . . . common law aggravating circumstances,' contrary to the express

intent of the legislature." *State v. Stubbs*, 170 Wn.2d 117, 131, 240 P.3d 143 (2010) (alteration in original) (quoting LAWS OF 2005, ch. 68, § 1).

¶31 Williams has not established an entitlement to appellate relief.[4]

## IV

¶32 Williams next contends that the trial court's entry of findings of fact and conclusions of law regarding the exceptional sentence violated Williams' constitutional right to a trial by jury. We disagree.

¶33 A criminal defendant has a constitutional right to have a jury determine " 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum,' " other than the fact of a prior conviction.[5] *Blakely*, 542 U.S. at 301 (quoting *Apprendi*, 530 U.S. at 490); *see also* U.S. CONST. amend. VI; WASH. CONST. art. I, § 21. The statutory maximum is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 U.S. at 303. "[T]he relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without any additional findings.*" *Blakely*, 542 U.S. at 303-04 (some emphasis added); *see also Ring v. Arizona*, 536 U.S. 584, 602, 122 S. Ct. 2428, 153 L. Ed. 2d. 556 (2002) ("defendant may not be 'expose[d] . . . to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict

---

[4] Williams also contends that there was insufficient evidence presented at trial to support the jury's finding that the rapid recidivism factor was proved. This is so, he avers, because no evidence was presented supporting the additional "elements" that he contends must be found by the jury. Given that we conclude that there are no such additional elements, Williams's argument is without merit.

[5] RCW 9.94A.535(2) sets forth four circumstances in which an exceptional sentence may be imposed "without a finding of fact by a jury." Three of these circumstances are based on the defendant's history of prior convictions. The fourth is when the imposition of such a sentence is stipulated to by the defendant and the State. None of these circumstances pertain to our discussion of the issue in this case.

alone' " (alterations in original) (quoting *Apprendi*, 530 U.S. at 483)). Thus, when an aggravating factor is found by the jury, the trial court is authorized to impose an exceptional sentence. A jury's finding that any single aggravating factor was proved establishes the facts legally essential to expose the defendant to the statutorily-authorized sentence for the crime committed. RCW 9.94A.537(6). The trial court then has broad discretion to constitutionally impose any sentence within the authorized range. *Harris v. United States*, 536 U.S. 545, 565, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002) (plurality opinion).

¶34 However, a statute requires the trial court to set forth the reasons for its decision to impose a sentence outside the standard sentence range.[6] RCW 9.94A.535. These reasons must be set forth in written findings of fact and conclusions of law. RCW 9.94A.535. The reasons set forth in the written findings of fact and conclusions of law are not restricted only to those facts found by the jury.

¶35 "The Sixth Amendment does not bar judicial fact-finding related to a minimum sentence that does not exceed the relevant statutory maximum." *State v. Clarke*, 156 Wn.2d 880, 891, 134 P.3d 188 (2006). This is because the trial court may, in determining the appropriate sentence within the authorized range, consider facts beyond those found by the jury.

> We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

*United States v. Booker*, 543 U.S. 220, 233, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) (Stevens, J., majority in part).

---

[6] In fact, "an exceptional sentence is reversible if the record does not support the reasons supplied by the sentencing court, the reasons stated do not support an exceptional sentence, or the sentence imposed was clearly too excessive or too lenient." *State v. Suleiman*, 158 Wn.2d 280, 291 n.3, 143 P.3d 795 (2006) (citing RCW 9.94A.585(4)).

Indeed, "[t]he judge may select any sentence within the range, based on facts not . . . proved to the jury . . . even if they persuade the judge to choose a much higher sentence than he or she otherwise would have imposed." *Harris*, 536 U.S. at 566. "[J]udicial fact-finding is not improper in the context of indeterminate sentencing because the offender has no right to a lesser sentence than his maximum sentence." *Clarke*, 156 Wn.2d at 892.

¶36 As explained in the seminal case on this issue:

> Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail.

*Blakely*, 542 U.S. at 309.

¶37 Notwithstanding that no constitutional violation occurs where a trial court considers facts not found by a jury in choosing an appropriate sentence within the authorized range, our legislature has determined that a defendant should be afforded some degree of involvement with regard to the factual determinations made by the trial court in deciding upon the appropriate sentence. A defendant is allowed, by statute, to dispute facts presented at sentencing. RCW 9.94A.530(2). Where a defendant does dispute a fact, the trial court must either hold an evidentiary hearing or disregard that fact. RCW 9.94A.530(2). No greater protection requiring a jury to make these factual findings is afforded a defendant by either the United States Constitution or the Washington Constitution.

¶38 Here, the jury found the aggravating factor of rapid recidivism beyond a reasonable doubt, in compliance with Sixth Amendment dictates. Once the jury made that finding, the trial court was authorized to sentence Williams to a

term of confinement up to the maximum allowed for his underlying conviction of assault in the third degree, which is five years (60 months). RCW 9A.20.021(c); RCW 9.94A-.537. That is, the trial court had the discretion to impose a sentence up to a maximum of 60 months and *did not need to make any additional findings* in order to constitutionally impose such a sentence. *See Blakely*, 542 U.S. at 303-04. Williams had no "legal right" to a sentence of less than 60 months. *See Blakely*, 542 U.S. at 309. The trial court herein imposed a sentence of 36 months, which is less than the maximum authorized by the jury's verdict.

¶39 The trial court articulated the reasons for its decision to impose the particular exceptional sentence that it imposed. In so doing, the trial court complied with the statutory requirement that it enter written findings and conclusions determining that there were substantial and compelling reasons justifying the imposition of an exceptional sentence. The trial court's written findings and conclusions related to Williams's prior convictions, to the fact that Williams had committed the current offense within 24 hours of being released from incarceration, and to the fact that Williams assaulted Officer Shearer without provocation and used a weapon to do so.

¶40 Williams contends that several of these findings were made in error, citing to *Gordon. See* 153 Wn. App. at 539-40 ("To the extent the trial court went beyond the findings made by the jury, it erred."). However, as discussed above, there is no fundamental right to a jury determination of facts the trial court considers in exercising its broad discretion to sentence within an authorized range. *Booker*, 543 U.S. at 233. A fact considered for sentencing purposes need be found by the jury only if it increases the authorized range of punishment. *Blakely*, 542 U.S. at 303. Neither the Sixth Amendment nor article I, section 21 require that a jury find the facts utilized by the trial court in deciding the appropriate length of an exceptional sentence, so long as that sentence does not exceed the maximum authorized by the jury's verdict.

¶41 The trial court herein determined that there were substantial and compelling reasons to impose an exceptional sentence as authorized by the jury's finding that Williams had committed the current offense shortly after being released from incarceration. The trial court properly articulated in its findings of fact and conclusions of law the reasons for its decision to impose an exceptional sentence of 36 months. There was no error.[7]

V

¶42 Williams next contends that RCW 9.94A.535(3)(t), articulating the rapid recidivism aggravator, is unconstitutionally vague both because the phrase "shortly after" is an inherently subjective term and because the phrase "released from incarceration" is indefinite. We disagree.

¶43 We review de novo a challenge to the constitutionality of a statute. *State v. Shultz*, 138 Wn.2d 638, 643, 980 P.2d 1265 (1999). Where the statute does not impinge on First Amendment rights, we evaluate a vagueness challenge "by examining the statute as applied under the particular facts of the case." *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992). Statutes are presumed to be constitutional. *City of Spokane v. Vaux*, 83 Wn.2d 126, 129, 516 P.2d 209 (1973). When a statute does not define terms alleged to be unconstitutionally vague, we "may 'look to existing law, ordinary usage, and the general purpose of the statute' to determine whether 'the statute meets constitutional requirements of clarity'." *State v. Hunt*, 75 Wn. App. 795, 801, 880 P.2d 96 (1994) (quoting *State v. Russell*, 69 Wn. App. 237, 245, 848 P.2d 743 (1993)).

---

[7] Williams relies on a recent Washington Supreme Court decision wherein the court held that an exceptional sentence based on a firearm enhancement violated the defendant's constitutional right to a jury trial where the jury had found only a deadly weapon enhancement proved but the trial court found that the deadly weapon was a firearm and, thus, imposed an exceptional sentence that went beyond the maximum sentence authorized by the jury's findings. *State v. Williams-Walker*, 167 Wn.2d 889, 898-99, 225 P.3d 913 (2010). However, the holding in *Williams-Walker* is inapposite because the trial court herein did not make any factual finding that increased the penalty for Williams's crime beyond that authorized by the jury's verdict. *See Blakely*, 542 U.S. at 301.

¶44 A statute violates the due process clause if (1) it " 'does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed' " or (2) it " 'does not provide ascertainable standards of guilt to protect against arbitrary enforcement.' " *State v. Williams*, 144 Wn.2d 197, 203, 26 P.3d 890 (2001) (internal quotation marks omitted) (quoting *City of Bellevue v. Lorang*, 140 Wn.2d 19, 30, 992 P.2d 496 (2000)).

¶45 As applied to the facts of this case, RCW 9.94A.535(3)(t) is not vague. Williams committed the assault against Officer Shearer within 24 hours of his release from incarceration after serving a sentence for a conviction on a different charge of assault in the third degree. Williams's commission of a crime within one day of being released from incarceration fits well within any common understanding of "shortly after." In addition, Williams was released from the King County jail after serving a criminal sentence, which fits well within the type of confinement qualifying as "incarceration." No reasonable person could believe that the circumstances presented herein constitute anything other than that "[t]he defendant committed the current offense shortly after being released from incarceration." RCW 9.94A.535(3)(t). Thus, these terms are not unconstitutionally vague as applied to the facts herein.

VI

¶46 Williams next contends that the trial court denied him due process under the Fourteenth Amendment when it did not reinstruct the jury on the "presumption of innocence" during the aggravating circumstances portion of Williams's bifurcated trial. We disagree.

¶47 During the first phase of Williams' trial, the trial court instructed the jury that the State had the burden of proving the existence of each element of the crime beyond a reasonable doubt. The trial court also instructed the jury on the presumption of innocence. In the second phase of trial, the trial court provided the jury with copies of the original

instructions in addition to the supplemental instructions, although the trial court did not re-read the original instructions aloud. The supplemental instructions explicitly provided, "All jury instructions read to you previously apply when you are making the determination of special verdict just as they did when you were making the determination of verdict in this case." CP at 28. Juries are presumed to follow the trial court's instructions. *State v. Hanna*, 123 Wn.2d 704, 711, 871 P.2d 135 (1994). Williams was afforded the benefit of the presumption of innocence instruction during the second phase of trial. Accordingly, there was no error.

## VII

¶48 Williams finally contends that the trial court erred by denying his motion for a mistrial, which was based upon spectator misconduct. We disagree.

¶49 A trial court's decision to deny a motion for a mistrial is reviewed for an abuse of discretion. *State v. Allen*, 159 Wn.2d 1, 10, 147 P.3d 581 (2006).

> In determining whether a trial court abused its discretion in denying a motion for mistrial, this court will find abuse "only when no reasonable judge would have reached the same conclusion." "The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly. Only errors affecting the outcome of the trial will be deemed prejudicial." In determining the effect of an irregular occurrence during trial, we examine "(1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it."

*State v. Johnson*, 124 Wn.2d 57, 76, 873 P.2d 514 (1994) (footnotes omitted) (internal quotation marks omitted) (quoting *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)).

¶50 Our Supreme Court has held that a trial court did not abuse its discretion by denying a motion for a mistrial where the motion was based upon a woman's angry

outburst during trial, the comments were directed toward the judge and jury, and there was evidence that the woman was the defendant's mother. *Johnson*, 124 Wn.2d at 76-77. The woman therein "insulted the State's witnesses and asserted that her 'son' was not a gang member." *Johnson*, 124 Wn.2d at 76. The court held that the trial court did not abuse its discretion by denying the defendant's motion for mistrial. *Johnson*, 124 Wn.2d at 77.

¶51 Here, the spectators' statements were made to jurors, outside the courtroom, the day after the jury had returned a verdict of guilty as to the underlying assault charge. The only determination remaining for the jury after hearing these comments was whether the defendant had committed the assault after recently being released from incarceration and, thus, whether the statutory aggravator was proved. The statements made to the jurors were "I am really mad" and "[y]ou put my son in jail."

¶52 These statements were not threatening and they did not implore the jury to reach some particular decision as to the only question remaining for their resolution. There was no indication that Williams directed the spectators to make the statements. *See State v. Bourgeois*, 133 Wn.2d 389, 408-09, 945 P.2d 1120 (1997) (holding that trial court properly denied motion for mistrial where spectator was making threatening, gun-mimicking gestures at a witness).

¶53 These comments would not have affected the jury's decision as to whether Williams committed the assault shortly after he had been released from incarceration. Williams has not demonstrated that the misconduct was so significant that he will have been treated unfairly unless granted a new trial. *Bourgeois*, 133 Wn.2d at 409. Thus, the spectator's comments were not so prejudicial that a new trial was the only remedy to ensure that Williams received a fair trial. *Johnson*, 124 Wn.2d at 76. Moreover, the trial court properly inquired as to whether "any juror's ability to be fair and impartial" was affected by the comments. RP (Jan. 16, 2009) at 23. There was no affirmative response from the jurors, which further indicates that no party was

prejudiced by the spectators' comments. The trial court did not abuse its discretion by denying Williams's motion for a mistrial.

¶54 Affirmed.

BECKER and COX, JJ., concur.