# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

STATE OF WASHINGTON,

                Respondent,

        v.

CLIFTON KELLY BELL,

                Appellant.

)
) No. 67910-4-I
)
) ORDER DENYING MOTION
) FOR RECONSIDERATION,
) WITHDRAWING OPINION,
) AND SUBSTITUTING OPINION
)
)

The appellant, Clifton Kelly Bell, has filed a motion for reconsideration herein. The respondent, State of Washington, has filed a response. The court has taken the matter under consideration and has determined that the motion for reconsideration should be denied.

Now, therefore, it is hereby

ORDERED that the motion for reconsideration is denied; and, it is further

ORDERED that the opinion in the above-referenced case filed on July 29, 2013, be withdrawn, and a substitute opinion be filed in its place.

DATED this _14th_ day of _October_, 2013.

WE CONCUR:

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,           )
                               )    No. 67910-4-I
              Respondent,      )
                               )    DIVISION ONE
      v.                       )
                               )    UNPUBLISHED OPINION
CLIFTON KELLY BELL,            )
                               )
              Appellant.       )    FILED: October 14, 2013

GROSSE, J. — An increased sentence following a criminal defendant's successful appeal violates due process if vindictiveness played a role in the resentencing. Here, Clifton Bell's increased sentence on remand did not violate due process because it was imposed by a different judge and there is no basis for concluding that the sentence was vindictive. Nor is there any basis for concluding that Bell's sentence violates other constitutional protections or rules governing the structure and length of exceptional sentences. We affirm.

FACTS

The State charged Bell with 14 counts of domestic violence against his former girlfriend, J.F. The charges included multiple counts of witness tampering, four counts of assault, and one count each of rape, unlawful imprisonment, and violation of a no-contact order. A jury convicted Bell on all counts. The jury also found an aggravating factor as to count I, second degree assault: "an ongoing pattern of psychological, physical, or sexual abuse of the victim manifested by multiple incidents over a prolonged period of time."

The court imposed an exceptional sentence of 144 months, stating that "[t]here is little question that this defendant nearly beat this young lady within an inch of her life, and that the jury so found. And I think the evidence was overwhelming with regard to his abuse of her."

Bell appealed, arguing in part that the multiple counts of witness tampering were one unit of prosecution. The State conceded error and this court remanded for resentencing.

Because the original sentencing judge had retired, his successor, Judge Bradshaw, presided over Bell's resentencing. At the outset of the hearing and in subsequent findings, Judge Bradshaw emphasized that he had reviewed a number of transcripts and sentencing materials.[1] He made the following pertinent findings of fact.

On February 17, 2006, Bell grabbed J.F.'s arm and threw her, dislocating her shoulder. On July 26, 2006, Bell pulled her into an apartment and began punching her. When she tried to escape, he closed and bolted the door. She then ran toward the balcony and grabbed the balcony railing as Bell tried to pull her back into the apartment. Bell let go, and J.F. flipped over the rail and landed on her back 15 feet below. She fractured her hip and suffered internal bleeding.

In late September 2006, J.F. and Bell were eating at a friend's house when J.F. placed her hand on Bell's leg. Bell angrily accused her of wiping ketchup on his pants. When she denied it, Bell threw a glass plate that gashed her forehead. That evening,

---

[1] These included the decision in Bell's first appeal, briefing by the State and the defense, transcripts of the original sentencing hearing, the testimony of Bell, the victim, and witness Ryan Anderson, the original judgment and sentence, transcripts and recordings of phone calls Bell made while in custody, letters from Bell's family and friends, photographs of the victim's injuries, documents showing the classes Bell

despite J.F.'s protests, Bell pinned her down and forced her to have intercourse. On another occasion, he ignored her refusal to engage in anal sex and penetrated her anus.

On September 23, 2007, Bell threw J.F.'s cell phone and broke it. He then punched her in the eye, grabbed her, and pulled her to the ground. He sat on her chest, pinned her arms, and said, "Do you want to see stars?" He proceeded to squeeze her neck until she could not breathe. Later, he grabbed her hair and pulled so hard that he pulled hair out of her scalp. He then locked the front door and removed the key to the deadbolt. Each time J.F. walked toward the door, Bell blocked her path and told her she was not going anywhere.

At Bell's resentencing, the prosecutor requested an exceptional sentence of 177 months. He asked the court to consider a number of factors, including Bell's conduct during the trial,[2] the statement J.F. submitted for resentencing, and the fact that the vacated witness tampering counts were redundant and relatively insignificant in the context of Bell's other crimes. The prosecutor played recordings of phone conversations between Bell and the victim and a tape of Bell soliciting someone to "[b]eat the bitch in the fucking face! She's a fucking rat!" The prosecutor also read J.F.'s written statement into the record.

Defense counsel requested a total sentence of 104 months. Counsel told the court that Bell "is here to accept responsibility." Bell's father and Bell both addressed

---

completed in custody, a statement from Bell's father, a statement from the victim, and Bell's most recent allocution.

[2] When J.F. took the stand, Bell called her "a bitch and a cunt." He called counsel "a piece of shit" and, as he left the courtroom, referred to them as a "bitch and a faggot."

the court. Bell began by stating, "I'm not here to take any weight away from what [the victim] said and as far as my behavior towards her. I think it's unfair for her to say that the people before her that I dated and the people after her, my, my situation with her was unique in the fact that she kind of instigated it and irritated it, but I in no way blame her for what happened." Echoing statements of defense counsel, Bell told the court that a longer sentence on remand "has been held vindictive and unconstitutional by the Supreme Court . . . ." The prosecutor responded that Bell knew when he appealed that a resentencing could occur and that "[s]ometimes re-sentencings are better for Defendants, sometimes they're worse."

The court imposed an increased exceptional sentence of 168 months, doubling the top of the standard range on count I and running that sentence consecutive to the remaining counts. The court stated:

> So, in looking at what should be doubled within [the standard range], I came back to the . . . facts. *I come back to what Mr. Bell . . . had to say, but was still disturbed that after four years you could not speak about this fact pattern, this crime, this trial, without still taking a shot at the victim. You still had to say she instigated . . . what happened.* [3]

In its conclusions of law, the court stated it had "exercised independent discretion" and "based its sentence on the data legitimately before the court and not on the fact of . . . the original appeal which is of course a matter of right." The court concluded that Bell's

> pattern of abuse against [J.F.], found beyond a reasonable doubt by the jury, warrants an exceptional sentence upward, and the Court, in its discretion, finds that doubling the high end of the standard range and running it consecutively to Count XIV, one of the most heinous of the defendant"s crimes . . . is an appropriate sanction in this case. The jury's special verdict provides a substantial and compelling reason to grant this exceptional sentence on Count I consecutive to Count XIV. . . . The

---

[3] (Emphasis added.)

pattern of abuse was psychological, physical, and sexual. . . . This sentence ensures punishment that is proportionate to the egregiousness of the offenses.

Bell appeals.

## ANALYSIS

Bell's arguments on appeal concern the increased exceptional sentence imposed on remand. We review the court's reasons for imposing an exceptional sentence de novo and the length of the sentence for abuse of discretion.[4]

Exceptional Sentence

Bell first contends the court improperly relied on facts not found by the jury in imposing an exceptional sentence. The court's findings and conclusions indicate otherwise.

A court's factual basis for departing from the standard range must generally arise from facts found by a jury, but the *length* of a sentence above the standard range may be based on any matter supported by the record.[5] In this case, finding of fact 11 and conclusion of law 9 demonstrate that the court's decision to depart from the standard range was based on the aggravating factor found by the jury. The other facts recited by the court in its findings and conclusions were properly considered in determining the *length* of Bell's sentence.[6]

---

[4] RCW 9.94A.585(4); State v. Hale, 146 Wn. App. 299, 307, 189 P.3d 829 (2008); State v. Law, 154 Wn.2d 85, 93, 110 P.3d 717 (2005) (quoting State v. Ha'mim, 132 Wn.2d 834, 840, 940 P.2d 633 (1997)).

[5] State v. Williams, 159 Wn. App. 298, 314-19, 244 P.3d 1018 (2011); State v. Hyder, 159 Wn.App. 234, 266-66, 244 P.3d 454 (2011); State v. Mail, 65 Wn. App. 295, 299, 828 P.2d 70 (1992) (once a jury's finding provides the basis for an exceptional sentence, "the available sentence length choices and, thus, the limits of permissible judicial discretion are expanded").

[6] Williams, 159 Wn. App. at 316.

Bell contends he lacked notice that the court would consider his criminal history and other facts, that these facts were not found by a jury, and that they inhere in the verdict and therefore do not support an exceptional sentence.[7] The State correctly points out that all of these arguments proceed from the same flawed premise, i.e., "that the court's findings of fact and conclusions of law enumerated individual bas[e]s for an exceptional sentence, and each individual finding should be analyzed as if it were an aggravating [factor] supporting [an] exceptional sentence." As discussed above, the challenged facts were neither recited for, nor necessary to justify the court's departure from the standard range and were properly considered in determining the length of Bell's sentence.

Next, Bell contends the court could not exceed the standard range and impose consecutive sentences based on a single aggravating factor. We disagree.

The Sentencing Reform Act of 1981 (SRA), chapter 9.94A, provides that a sentence may be exceptional in two different respects: it may be outside the standard range or it may be consecutive to another sentence.[8] Citing a series of decisions from Division Three of this court, Bell contends a sentence that is exceptional in two respects

---

[7] Bell claims the record does not support the court's finding that he has seven prior adult misdemeanor convictions that are not accounted for in the standard range. He is mistaken. His misdemeanor history is discussed in the initial bail summary and the State's sentencing memorandum filed in 2011.

[8] A court may impose a sentence outside the standard sentence range for an offense if it finds there are "substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. The statute also explains that "[a] departure from the standards in RCW 9.94A.589(1) and (2) governing whether sentences are to be served consecutively or concurrently is an exceptional sentence subject to the limitations in this section . . . ." RCW 9.94A.535.

cannot be based on a single aggravating factor.[9] The cited decisions, however, are superseded by our Supreme Court's decision in State v. Smith.[10]

In Smith, the defendant argued that the trial court could not impose a sentence that was both outside the standard range and consecutive on the same count.[11] The Smith court disagreed:

> Petitioner cites language from State v. Batista, 116 Wn.2d 777, 808 P.2d 1141 (1991): "If a presumptive sentence is clearly too lenient, this problem could be remedied *either* by lengthening concurrent sentences, *or* by imposing consecutive sentences." Batista, [116 Wn.2d] at 785-86.
> However, petitioners fail to read this passage in context. Other sections of that opinion make it clear that "[w]here multiple current offenses are concerned, *in addition to lengthening of sentences,* an exceptional sentence may also consist of imposition of consecutive sentences where concurrent sentencing is otherwise the standard." . . . . Batista, [116 Wn.2d] at 785-86. Indeed, in State v. Oxborrow, 106 Wn.2d 525, 723 P.2d 1123 (1986), we upheld an exceptional sentence which was both beyond the standard range and consecutive. The SRA itself supports no other result. Thus, we hold that it is permissible to impose an exceptional sentence which includes both sentencing components.[12]

In light of Smith, the decisions cited by Bell are no longer viable and his contention fails.[13]

---

[9] State v. McClure, 64 Wn. App. 528, 827 P.2d 290 (1992); State v. Quigg, 72 Wn. App. 828, 866 P.2d 655 (1994); In re Pers. Restraint of Holmes, 69 Wn. App. 282, 848 P.2d 754 (1993), overruled on other grounds by State v. Calle, 125 Wn.2d 769, 888 P.2d 155 (1995).

[10] 123 Wn.2d 51, 864 P.2d 1371 (1993), overruled in part on other grounds by State v. Hughes, 154 Wn.2d 118, 110 P.3d 192 (2005).

[11] Smith, 123 Wn.2d at 57.

[12] Smith, 123 Wn.2d at 57-58.

[13] See State v. Flake, 76 Wn. App. 174, 182-83, 883 P.2d 341 (1994) (noting Smith's implicit rejection of prior cases). Contrary to Bell's assertions, our decision in State v. Stewart, 72 Wn. App. 885, 901, 866 P.2d 677 (1994) did not address whether a single aggravating factor could support consecutive sentences and a sentence above the standard range.

Increased Sentence Following Successful Appeal

Bell contends his increased sentence on remand was vindictive and violates due process. We disagree.

In general, an increased sentence following a successful appeal violates due process if vindictiveness played a role in the resentencing.[14] When the same judge imposes both the original and post-appeal sentences, a rebuttable presumption of vindictiveness arises.[15] The presumption does not arise, however, when the increased sentence is imposed by a different judge.[16] We explained the reasons for this rule in State v. Parmelee:

> Concerns about judicial vindictiveness arise when the judge fully considers a sentence and renders a decision, and then, after a successful appeal, changes the sentence without explanation. [Alabama v. ]Smith, 490 U.S. [794,] 802[, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989)] ("[T]he sentencing judge who presides at both trials can be expected to operate in the context of roughly the same sentencing considerations after the second trial as he does after the first; any unexplained change in the sentence is therefore subject to a presumption of vindictiveness."). Without an explanation, it appears that the defendant's successful appeal was the motivation for the increased sentence. Under those circumstances, it is appropriate to apply a presumption of vindictiveness to protect against actual vindictiveness and the chilling effect that perceived vindictiveness may have. The same concerns, however, are not present here because different judges imposed the different sentences. The second judge had yet to consider the sentence and exercise discretion in meting out an appropriate punishment. The second judge did not have a personal stake in the first sentence and therefore did not have a personal motive for vindictiveness. Additionally, "'[i]t may often be that the [second sentencer] will impose a punishment more severe than that received from the [first]. But it no more follows that such a sentence is a vindictive penalty for seeking a [new] trial than that the [first sentencer] imposed a

---

[14] State v. Parmelee, 121 Wn. App. 707, 708, 90 P.3d 1092 (2004), review denied, 153 Wn.2d 1013 (2005).

[15] Parmelee, 121 Wn. App. at 708.

[16] Parmelee, 121 Wn. App. at 709-12. The Ninth Circuit Court of Appeals came to the same conclusion in an unpublished decision rejecting Parmelee's appeal of a habeas action in which he raised the same issue. Parmelee v. Clarke, 251 Fed. App'x 450 (9th Cir. 2007).

lenient penalty.'" [Texas v. ]McCullough, 475 U.S. [134,] 140, [106 S. Ct. 976, 89 L. Ed. 2d 104 (1986)] (alterations in original) (quoting Colten v. Kentucky, 407 U.S. 104, 117, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972)). *Because there is not a reasonable likelihood that actual vindictiveness plays a role in sentencing when a different judge imposes the more severe sentence, the presumption of vindictiveness did not arise here.*[17]

Our reasoning in Parmelee applies equally here. Because a different judge imposed Bell's sentence on remand, no presumption of vindictiveness arose. It was therefore Bell's burden to prove actual vindictiveness.[18] He has not done so.

Bell concedes Parmelee is on point but contends it is wrongly decided. He argues that providing a presumption of vindictiveness for defendants resentenced by the same judge but not for those resentenced by a different judge violates equal protection. But equal protection applies only to persons who are similarly situated.[19] For purposes of vindictive sentencing rules, defendants resentenced by a different judge and defendants resentenced by the same judge are not similarly situated. And even if they were, treating them differently would not violate equal protection because, as explained in Parmelee, there is a rational basis to deny the presumption of vindictiveness when a *new* judge increases a defendant's sentence following appeal.[20]

Moreover, although we need not decide whether a presumption of vindictiveness could be rebutted in this case, the State correctly points out that the record before

---

[17] 121 Wn. App. at 711 (emphasis added) (alterations in original) (footnote omitted).

[18] State v. Larson, 56 Wn. App. 323, 328, 783 P.2d 1093 (1989); Smith, 490 U.S. at 799-800 (where there is no reasonable likelihood of actual vindictiveness on the part of the sentencing authority, "the burden remains upon the defendant to prove actual vindictiveness").

[19] State v. Handley, 115 Wn.2d 275, 289-90, 796 P.2d 1266 (1990).

[20] See Handley, 115 Wn.2d at 290 (if persons are similarly situated, equal protection is violated only if there is no rational basis for the differentiation among the various class members).

Judge Bradshaw differed from the record before the original sentencing judge. During his allocution before Judge Bradshaw, Bell accused J.F. of instigating the domestic violence. Although Bell's blame-shifting was not new, this time it came after years of incarceration and ample time to reflect. Judge Bradshaw emphasized this point in explaining the reasons for his sentence.

Judge Bradshaw also received a lengthy written statement from the victim, J.F. Significantly, she had not appeared or submitted a statement at the original sentencing. Her statement powerfully described her ongoing physical suffering from injuries inflicted by Bell and predicted, somewhat presciently, Bell's failure to change:

> As a result of torn ligaments and shredded cartilage, my shoulder continued to repeatedly come out of the socket sometimes as frequently as every week. Simple things like reaching for my seat belt or raising my arm to wash my hair became almost impossible to do without my arm rolling out of the socket. Anyone who's had their arm detached from the socket knows the excruciating pain that comes along with each dislocation. This has been a constant reminder of the hell I lived through after meeting Clifton Bell.
>
> I was just now able to save up enough money for partial payment to have . . . reconstructive surgery on my shoulder on August 20, 2011. I am now in physical therapy three times per week . . . .
>
> . . . .
>
> . . . One of my three fractures was in my S1 joint, this is where the sciatic nerve starts and runs all the way down the leg. As a result of that nerve being pinched to this day I have lower back pain and sometimes shooting down my leg if I'm standing too long. . . .
>
> . . . .
>
> I am scared for the next girl he meets. She may not be as lucky as I was. It only takes one wrong fall to hit your head and never wake up. I do not believe . . . Clifton is any better of a person today than he was before he went to prison. He'll be the first to blame his incarceration on the system, and that he did nothing wrong. This illustrates his type of character, or lack of. How can someone change if they blame all their actions on something else?

Bell's allocution and J.F.'s statement are nonvindictive reasons that arguably rebut any presumption of vindictiveness arising from the court's increased sentence.[21]

Bell also argues that the increased sentence unconstitutionally punished him for exercising his state constitutional right to appeal[22] and that allowing such sentences impermissibly chills the exercise of that right. He cites no authority indicating that our state constitutional right to appeal provides him greater protection than the state or federal due process clauses. Instead, he relies primarily on State v. Sims.[23] Sims is distinguishable.

Sims argued, and the State conceded, that a banishment condition in his special sex offender sentencing alternative (SSOSA) sentence was unconstitutional. The Court of Appeals agreed but held that the trial court on remand would have discretion to either reimpose a SSOSA with constitutionally tailored conditions or deny a SSOSA altogether.[24] The State Supreme Court reversed the Court of Appeals in part, ruling that because Sims only challenged a condition of the SSOSA sentence, and because the State did not cross-appeal the SSOSA, the State could not seek denial of the SSOSA on remand. Although the Supreme Court acknowledged that such relief would be available under RAP 2.4(a) if demanded by the necessities of the case, it concluded such necessities had not been shown, particularly given the chilling effect such relief would have on Sims' constitutional right to appeal.

---

[21] Parmelee, 121 Wn. App. at 712 (The court also noted that even if the presumption arises, it may be rebutted if the second sentencing judge provides nonvindictive reasons for the sentence.).

[22] The Washington State Constitution affords criminal defendants "the right to appeal in all cases." WASH. CONST. art. I, sec. 22.

[23] 171 Wn.2d 436, 447-49, 256 P.3d 285 (2011).

[24] State v. Sims, 152 Wn. App. 526, 534, 216 P.3d 470 (2009).

Unlike Sims, however, Bell raised issues on appeal that required a full resentencing, not just tailoring of a sentence condition. A court has discretion at a full resentencing to impose any sentence within the authorized range.[25] Thus, the Sims court's concerns are inapplicable here.

More pertinent to our decision here are the United States Supreme Court's statements in Chaffin v. Stynchcombe.[26] Chaffin argued "that harsher sentences on retrial are impermissible because, irrespective of their causes and even conceding that vindictiveness plays no discernible role, they have a 'chilling effect' on the convicted defendant's exercise of his right to challenge his first conviction either by direct appeal or collateral attack."[27] In rejecting this argument, the Supreme Court compared the decision to appeal with the decision to plead guilty. The Court noted that every time a defendant rejects a plea bargain and exercises his right to trial, the potential negative result of that exercise may indeed "ha[ve] a discouraging effect on the defendant's assertion of his trial rights[.]"[28] Noting that it had previously held this effect was merely an "inevitable attribute" of a legitimate system, the court reached the same conclusion with respect to the risks of a greater sentence following appeal, stating "nothing in the right to appeal or the right to attack collaterally a conviction . . . elevates those rights above the rights to jury trial . . . ."[29]

The Court also noted that, given all the contingencies that would need to occur for a harsher sentence devoid of vindictiveness to actually occur, the alleged chilling

---

[25] See State v. Rowland, 174 Wn.2d 150, 272 P.3d 242 (2012).
[26] 412 U.S. 17, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973).
[27] Chaffin, 412 U.S. at 29.
[28] Chaffin, 412 U.S. at 31.
[29] Chaffin, 412 U.S. at 31, 33.

effect would seldom be a deterrent of any significance.[30] The Court concluded, "[W]e cannot agree with petitioner that such speculative prospects interfere with the right to make a free choice whether to appeal."[31] It expressly held that "[t]he choice occasioned by the possibility of a harsher sentence . . . does not place an impermissible burden on the right of a criminal defendant to appeal or attack collaterally his conviction."[32] In light of this reasoning, which we find persuasive, and the absence of any basis in Washington law for Bell's claim under the state constitution, we reject it.[33]

---

[30] Chaffin, 412 U.S. at 33-34.

[31] Chaffin, 412 U.S. at 35.

[32] Chaffin, 412 U.S. at 35.

[33] Bell also cites decisions from other jurisdictions, claiming they support his argument under the state constitutional right to appeal. A number of these cases rest on due process principles. Shagloak v. State, 597 P.2d 142 (Alaska 1979); State v. Violette, 576 A.2d 1359, 1360-61 (Me. 1990); State v. Eden, 163 W. Va. 370, 256 S.E.2d 868, 876 (1979). We have already determined that the sentence in this case did not violate due process. Of the remaining cases, only a few rest on a state constitutional right to appeal. Compare People v. Mulier, 12 Mich. App. 28, 162 N.W.2d 292, 295 (1968) (state constitutional right to appeal); State v. Sorensen, 639 P.2d 179, 180-81 (Utah 1981) (state statute and state constitutional right to appeal), with People v. Henderson, 60 Cal. 2d 482, 386 P.2d 677, 685 (1963) (double jeopardy); State v. Mara, 102 Hawaii 346, 76 P.3d 589, 596-98 (2003) (state statute); State v. Burrell, 772 N.W.2d 459, 469-70 (Minn. 2009) (judicial policy); State v. Wolf, 46 N.J. 301, 216 A.2d 586, 589 (1966) (procedural policies). And virtually all of the cases are distinguishable on the ground that, unlike this case, they did not involve an increased sentence imposed by a different judge and based on evidence that was not before the original sentencing judge. Notably, several of the cited cases expressly acknowledge the propriety of an increased sentence based on new evidence. State v. Partain, 349 Or. 10, 239 P.3d 232, 242 (2010) (allowing increased sentence on resentencing so long as reasons appear on record and are "based on identified facts of which the first sentencing judge was unaware"); Commonwealth v. Hyatt, 419 Mass. 815, 647 N.E.2d 1168, 1173-74 (1995) (increased sentence requires statement of reasoning and of new information); Violette, 576 A.2d at 1360-61 (increased sentence allowed for intervening recidivism); Mulier, 162 N.W.2d at 295 (precluding increased sentence where "record is barren of any grounds tending to support the harsher sentence").

13

Excessive Sentence

Bell asserts that his increased sentence is clearly excessive. A sentence is excessive only if it shocks the conscience.[34] Considering Bell's repeated acts of domestic violence, the vicious nature of his attacks, the resulting injuries to the victim, his attempts to recruit others to intimidate J.F. and prevent her from testifying, his lack of remorse, and J.F.'s powerful statement to the court at resentencing, we conclude his sentence is not clearly excessive.

Ineffective Assistance of Counsel

Last, Bell argues that the unpredictability of a judge's retirement makes it impossible for defense counsel to render effective assistance regarding the risks of appeal. He also argues that his counsel in his first appeal, who is also counsel in the current appeal, was ineffective for employing a strategy that resulted in a longer sentence. He contends he should be afforded conflict-free counsel to argue this issue. These arguments are meritless.

Many aspects of a criminal prosecution are unpredictable. But such uncertainties do not make it impossible to render effective assistance of counsel. On the contrary, counsel can effectively assist their clients by advising them of the risks and possible outcomes of their decisions. When necessary and appropriate, counsel can advise their clients of the possibility that a successful appeal could result in a retrial or resentencing before a different judge who could increase or reduce the original sentence.

Equally meritless is counsel's claim that he may have been ineffective for exposing Bell to an increased sentence. Even if counsel could have determined that

---

[34] State v. Ritchie, 126 Wn.2d 388, 392, 894 P.2d 1308 (1992) (quoting State v. Ross, 71 Wn.2d 556, 571-72, 861 P.2d 473 (1993)).

14

the original judge had retired and that any resentencing would be before a new judge, counsel could not have known whether a new judge would impose a different sentence. On this record, there is no basis to conclude that the performance of Bell's counsel in his first appeal was deficient or to appoint conflict-free counsel to argue the point in this appeal.

Affirmed.

WE CONCUR: